UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LOIS LEIGHTON, et al.,

                Plaintiffs,

       -against-                        17-cv-3120 (LAK) (KNF)

ALEXANDER I. POLTORAK, et al.,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/23/2018

## MEMORANDUM OPINION

Appearances:

    Andrew S. Curfman
    Jon Troyer
    EMERSON THOMSON BENNETT LLC

    *Attorneys for Plaintiffs*

    Elie C. Poltorak
    POLTORAK & ASSOCIATES, P.C.

    David J. Michalski
    THE MICHALSKI LAW FIRM, LLC

    *Attorneys for Defendants*

    Michael Emil Shanahan
    MCDERMOTT, WILL & EMERY, LLP

    *Additional Attorney for Defendant General Patent Corporation*

LEWIS A. KAPLAN, *District Judge.*

        This case arose from a business arrangement pursuant to which defendants agreed to

manage and enforce a portfolio of patents owned by plaintiffs. Plaintiffs filed their complaint in the Northern District of Ohio. Defendants moved, pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), to dismiss the case for lack of personal jurisdiction and improper venue.[1] Judge Dan A. Polster denied the motion insofar as it attacked personal jurisdiction but concluded that venue was improper and transferred the case to this court.[2]

The matter now is before the Court on defendants' motion, filed after the case was transferred, for an order pursuant to Federal Rules of Civil Procedure 8(a)(2), 9(b), and 12(b)(6) dismissing the complaint [DI 36].

*Facts*

A.     *The R&R*

A magistrate judge has submitted a report and recommendation (the "R&R") recommending that the motion be denied pursuant to Rule 12(g)(2).[3] He concluded that the motion was foreclosed by defendant's previous motion before Judge Polster.

Rule 12(g)(2) provides:

"Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion."

Defendants object to the R&R on the basis that a Rule 12 motion for failure to state

---

[1]     DI 10.

[2]     DI 18, 19.

[3]     DI 42 at 3.

a claim is not waivable in light of Rule 12(h)(2), which provides:

> "Failure to state a claim upon which relief can be granted . . . may be raised: (A) in any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial."

In *Patel v. Contemporary Classics of Beverly Hills*,[4] the Second Circuit concluded that "the defense of failure to state a claim is not waivable." It held also that a motion to dismiss for failure to state a claim that was made under Rule 12(b)(6), but filed after the defendant had filed an answer, should be construed as a Rule 12(c) motion for judgment on the pleadings and considered on its merits.[5] As defendants here have not yet filed a valid answer, the styling of the instant motion as one pursuant to Rule 12(b)(6) likely is appropriate. The Court need not decide the issue, however, because "[i]n deciding a Rule 12(c) motion, [the Court] appl[ies] the same standard as that applicable to a motion under Rule 12(b)(6)."[6] In any event, there would be no point in denying this motion, as defendants would be free to make an essentially identical motion pursuant to Rule 12(c) after filing their answer. Accordingly, the Court respectfully declines to follow the recommendation of the magistrate judge and considers defendants' motion on the merits.

---

[4]

259 F.3d 123 (2d Cir. 2001).

[5]

*Id.* at 125-26.

[6]

*Livant v. Clifton*, 272 F. App'x 113, 115 (2d Cir. 2008) (internal quotation marks omitted) (quoting *Desiano v. Warner–Lambert & Co.*, 467 F.3d 85, 89 (2d Cir. 2006)); *see also Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, No. 06 Civ. 8195 (DLC), 2008 WL 2695090, at *2 (S.D.N.Y. July 8, 2008) (construing a second Rule 12 motion to dismiss for failure to state a claim as a Rule 12(c) motion that was not barred by Rule 12(g)).

## B.    *Formation of Leighton Technologies, LLC*

Plaintiffs Keith and Lois Leighton[7] owned a portfolio of patents (the "Leighton IP"). In 2002, they entered into an arrangement with General Patent Corporation International ("GPCI," now defendant General Patent Corporation ("GPC")), pursuant to which GPCI undertook to license and/or enforce the Leighton IP.[8]

The Leightons' arrangement with GPCI was effectuated through the formation in May 2003 of an enforcement vehicle, Leighton Technologies, LLC ("LT"), the sole business of which was to acquire and license and/or enforce the Leighton IP.[9] The members of LT were the Leightons, GPCI, IP Holdings LLC ("IPH," an affiliate of GPCI[10]), and a few additional individual minority owners.[11] The income, gains, losses, deductions, and credits of LT were allocated to the members as follows: approximately 49.5 percent to the Leightons, 33 percent to GPCI, 17 percent to IPH, and approximately 0.5 percent to the individual minority members.[12] The Leightons transferred the

---

[7]    Keith Leighton passed away shortly after the action was filed. David T. Leighton, as executor of Mr. Leighton's estate, was substituted for Keith Leighton pursuant to Judge Polster's order of March 23, 2017.

[8]    DI 1-1.

[9]    DI 1-3 at 1-2.

[10]    DI 1 at 3.

[11]    DI 1-3 at 16.

[12]    *Id.* at 4, 18.

Leighton IP to LT upon its formation.[13]

The Operating Agreement of LT provided for the exclusive management of LT by managers[14] and designated GPCI as the company's "initial Manager, to serve until replaced by an elected manager."[15] As no subsequent election occurred, GPCI served as the sole manager of LT throughout the relevant period.[16]

As manager, GPCI had "the exclusive right, authority, and responsibility to manage the day-to-day operations and affairs of the Company and to make all decisions with respect thereto." No non-manager members were permitted to "participate in . . . the control of management of the Company's business."[17] Indeed, except as expressly provided in the Operating Agreement, members had "no voice in, nor [took] any part in, nor intefere[d] with, the conduct, control or management of the business of the Company in their capacity as Members."[18]

Accordingly, GPCI was given broad authority to act in the name and on behalf of LT.

---

[13]

DI 1-2.

Both the Operating Agreement of LT and the Patent Transfer Agreement are governed by New York law. *Id.* at 7; DI 1-3 at 13.

[14]

*Id.* at 5-6 ("The management of the business and affairs of the Company shall be conducted by or under the responsibility of one or more Managers. Members who are not Managers shall have neither the authority to act on behalf of the Company, nor the responsibility to take care of its affairs or business.").

[15]

*Id.* at 6.

[16]

DI 1 at 5.

[17]

DI 1-3 at 6.

[18]

*Id.* at 10.

It was authorized to "execute and deliver any and all agreements, licenses, contracts, documents, certifications and instruments necessary or convenient in connection with the carrying on in the usual way of the business and affairs of the Company," "borrow money and issue evidences of indebtedness and assume existing indebtedness necessary, convenient or incidental to the accomplishment of the purposes of the Company," "deal with, or otherwise engage in business with, or provide services to and receive compensation therefor from, any person who provides any services to, lends money to, sells property to, or purchases property from, the Company," "retain or employ and coordinate the services of employees, supervisors, accountants, attorneys and other persons necessary or appropriate to carry out the business and purposes of the Company," and "engage in any kind of activity and to perform and carry out such contracts of any kind necessary to, or in connection with, or incidental to in the furtherance of, the carrying on in the usual way of the business and purposes of the Company in accordance with [the Operating Agreement]," among other things.[19]

In addition, GPCI, as manager, was entitled to be reimbursed for any legal fees or related third-party expenses it incurred.[20] Although this point ultimately was not memorialized in the Operating Agreement, defendant Lerner conveyed to Keith Leighton in a letter dated August 29, 2002 that "legal fees and related disbursements" were meant to include "monies paid to third parties

---

[19]

      *Id.* at 6-8.

[20]

      *Id.* at 9; *see also* DI 1-1 at 1 (providing, in letter of intent from GPCI to Keith Leighton, that "GPCI [would] be responsible for paying all legal fees, disbursements, and other directly attributable costs" and that "[a]ll royalties, income and/or other proceeds, *net of legal fees and related disbursements*, [would] be divided equally between the [Leightons] and GPCI" (emphasis added)).

directly relating to litigation or preparations therefor," but not GPCI's internal costs and overhead.[21]

All members covenanted and agreed that they would "not, directly or indirectly, obtain or seek to obtain any commission, fee or other form of compensation from any person for products sold to or services provided to the Company or its affiliates."[22] In addition, GPCI, as manager, was subject to the duties of managers under New York's Limited Liability Company Law — namely, to "perform [its] duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under similar circumstances."[23]

It appears that the activities of LT ultimately came to a close and the patents were transferred back to the Leightons.[24] Nonetheless, LT remains listed as "active" on the website of the New York State Department of State's Division of Corporations.[25]

## C.     *The Complaint*

On December 1, 2016, the Leightons sued GPCI, GPC, and IPH as well as Alexander Poltorak, chief operating officer of GPC, and Paul Lerner, former senior vice president and general

---

[21]

DI 1-4 at 1.

[22]

DI 1-3 at 5.

[23]

N.Y. LTD. LIAB. CO. LAW § 409(a) (McKinney 2007); *see also* DI 1-3 at 6 ("[S]ubject to the other provisions of this Agreement, the Manages [sic] shall have all of the rights and powers of a Manager as provided under the Law and as otherwise provided by law."); *id.* at 1 (defining "Law" to mean "the New York Limited Liability Company Law, as amended from time to time").

[24]

DI 1 at 9.

[25]

Verified as of May 23, 2018.

counsel of GPC. Asserting a long list of state law claims, the complaint essentially alleges that defendants engaged in various forms of self-dealing and that plaintiffs consequently received less income from LT than they otherwise would have.[26] In particular, the complaint alleges that:

- Defendants engaged in a course of self-dealing in violation of their fiduciary obligations by forming IPH and funneling significant portions of LT revenues to IPH in the guise of expenses.[27]

- Defendants arranged for loans through two individuals, Sheldon and Donadio, allegedly for the purpose of funding litigation involving the Leighton IP. Upon information and belief, however, defendants allegedly engaged in a kickback scheme with Sheldon and Donadio and repaid excessive amounts.[28]

- Defendants Poltorak and Lerner fraudulently induced plaintiffs into entering into the agreements with the remaining defendants by falsely asserting that they themselves would conduct the enforcement efforts, not outside counsel, and by making additional false assertions regarding their own expense reimbursements and that the other defendants would not take revenues beyond their respective distributions from

---

[26] Plaintiffs seek compensatory and punitive damages and various injunctive relief, including barring defendants from engaging in the collection of royalties or the administration of claims related to the Leighton IP. Plaintiffs assert also that their agreements with defendants should be declared void and that defendants should disgorge all proceeds received from LT related to the Leighton IP and surrender all profits derived from their marketing efforts using the LT name and enforcement efforts. Plaintiffs seek also attorneys fees and costs. DI 1 at 10.

[27] *Id.* at 6.

[28] *Id.* at 5, 7.

LT.[29]

- Defendants paid significantly more in expenses for litigation efforts than estimated by the firms that conducted the work. Upon information and belief, defendants engaged in a plan to redirect a portion of those legal expenses for their own benefit.[30]

- Upon information and belief, defendants engaged in additional kickback schemes involving parties against whom enforcement efforts were brought by settling cases far below the market value for licensing and/or damages related to infringement of the Leighton IP. Plaintiffs specifically allege that in one case, infringement claims were brought seeking more than $20 million in damages. At one point the defendant in that infringement case offered to settle for $2.4 million, but defendants in this case never informed plaintiffs of the offer and ultimately settled the claims for only $1 million.[31]

- Defendants squandered other opportunities for infringement claims by granting overly broad licenses and/or tortiously interfering with prospective business opportunities.[32]

- Defendants failed to distribute royalties from the Leighton IP to all members of LT,

---

[29]

*Id.* at 6-7.

[30]

*Id.* at 7.

[31]

*Id.* Upon information and belief, defendants engaged in similar patterns of fraud and concealment with many if not all of the licensees of the Leighton IP. *Id.* at 8.

[32]

*Id.* at 9.

claiming instead that the money was needed to reimburse expenses. Defendants failed also properly to collect and verify the accuracy of such royalties or provide a full accounting to plaintiffs of the activities of LT.[33]

- Insofar as any defendant is licensed to practice law, such defendant committed legal malpractice and professional misconduct.[34]

- Finally, GPC failed to retain documents related to LT other than those related to GPC's ongoing collection of royalties from the Leighton IP.[35]

Defendants move to dismiss the complaint for failing to meet the pleading standard articulated in *Bell Atlantic Corp. v. Twombly*[36] and *Ashcroft v. Iqbal*[37] and, where applicable, for failing to plead with particularity pursuant to Rule 9(b).[38] Plaintiffs oppose the motion to dismiss and, in the alternative, move for leave to amend the complaint.[39]

---

[33] *Id.* at 8-9.

[34] *Id.* at 9.

[35] *Id.*

[36] 550 U.S. 544, 570 (2007).

[37] 556 U.S. 662, 678 (2009).

[38] DI 36.

[39] DI 34.

*Discussion*

A.     *Pleading Standard*

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"[40] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] In considering a motion to dismiss, the Court generally "accept[s] all factual allegations in the complaint as true and draw[s] all reasonable inferences in the plaintiffs' favor."[42] To the extent plaintiffs allege fraud, however, the complaint is subject to the heightened pleading standard of Rule 9(b) and "must state with particularity the circumstances constituting fraud."[43] Rule 9(b) requires that a complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."[44] Although "the fraud alleged must be stated with particularity . . . the requisite intent of the alleged

---

[40]    *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

[41]    *Id.*

[42]    *Rombach v. Chang*, 355 F.3d 164, 169 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)).

[43]    Fed. R. Civ. P. 9(b).

[44]    *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000)).

perpetrator of the fraud need not be alleged with great specificity."[45] Nonetheless, a complaint "must allege facts that give rise to a strong inference of fraudulent intent,"[46] which "may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."[47]

### B. Fraudulent Inducement

"To state a claim for fraudulent inducement under New York law, a plaintiff must show: (1) a representation of material fact, (2) which was untrue, (3) which was known to be untrue or made with reckless disregard for the truth, (4) which was offered to deceive another or induce him to act, and (5) which that other party relied on to its injury."[48] In order to assert a claim of fraudulent inducement with respect to a promise of some future actions or performance, the complaint must allege that the speaker did not intend to fulfil the promise at the time it was made.[49]

---

[45]
  *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 327, 338 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996)).

[46]
  *Id.* (internal quotation marks omitted).

[47]
  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006).

[48]
  *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 580 (2d Cir. 2005) (citations omitted). Plaintiffs' claim of fraudulent inducement is subject to the pleading requirements of Rule 9(b). *Id.*

[49]
  *See Amusement Indus., Inc.*, 693 F. Supp. 2d at 351 ("'[A] failure to perform promises of future acts is not fraud unless there exists an intent not to comply with the promise at the time it is made.'" (quoting *Murray v. Xerox Corp.*, 811 F.2d 118, 121 (2d Cir. 1987)); *see also Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) ("The failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to

Plaintiffs here allege that they were fraudulently induced by Poltorak and Lerner to enter into "the agreements with the remaining Defendants by making false assertions that they would themselves be conducting the enforcement efforts, not outside counsel, and by making additional false assertions regarding their own expense reimbursements, and that the other Defendants would not take any revenues beyond that amount as members of LT."[50] In each case, plaintiffs fail to allege a misrepresentation of material existing fact.

Two of the three alleged misrepresentations were not misstatements of then existing fact. The alleged false assertions that defendants themselves would conduct the enforcement efforts on behalf of LT and that defendants "would not take any revenues beyond that amount as members of LT"[51] each were promissory in nature. But mere allegations of non-performance are insufficient to state a claim for fraudulent inducement. The complaint must assert at least that Poltorak or Lerner had no intention of performing as they had promised at the time that they made these alleged misrepresentations, perhaps among other facts.

The complaint is similarly lacking with respect to the alleged misrepresentations related to reimbursed expenses. As an initial matter, the complaint does not identify any representations related to expenses as a subject of their fraudulent inducement claim. The complaint,

---

perform at the time the promise was made." (citations omitted)); *Stewart v. Jackson & Nash*, 976 F.2d 86, 89 (2d Cir. 1992) ("[W]hile mere promissory statements as to what will be done in the future are not actionable, . . . it is settled that, if a promise was actually made with a preconceived and undisclosed intention of not performing it, it constitutes a misrepresentation of material existing fact upon which an action for recision based on fraudulent inducement may be predicated." (internal quotation marks and emphasis omitted) (quoting *Sabo v. Delman*, 3 N.Y.2d 155, 160 (1957))).

[50]

DI 1 at 6-7.

[51]

*Id.* at 7.

however, does allege that plaintiffs were told by Lerner that "deductions from revenues earned in LT's patent enforcement actions would not include the Defendant's internal costs and overhead."[52] To the extent that this representation was intended to form the basis of plaintiffs' claim, it is to no avail because the complaint again fails to assert that Poltorak or Lerner intended not to perform on this promissory statement at the time it was made.[53]

Accordingly, the complaint fails to state a claim of fraudulent inducement.


## C. Fraudulent Concealment

"The elements of a fraudulent concealment claim under New York law are: (1) a duty to disclose material facts; (2) knowledge of material facts by a party bound to make such disclosures; (3) failure to discharge a duty to disclose; (4) scienter; (5) reliance; and (6) damages."[54]

Plaintiffs allege only that defendants, at some unspecified point, initiated

---

[52]    *Id.* at 6.

[53]    Indeed, the complaint fails even to assert present non-performance. It asserts that "IPH received in excess of $1.5 million from LT revenues for 'reimbursed expenses,'" *id.*, but makes no allegations as to the substance of these "reimbursed expenses." The Court then has no basis even to assume that the alleged "reimbursed expenses" to IPH consisted of internal costs or overhead or any other prohibited payment.

The complaint alleges also that defendants paid significantly more in litigation expenses than was estimated by the firms conducting LT's legal affairs. *Id.* at 7. However, this allegation cannot form a basis for a fraudulent inducement claim because such payments, and any related estimates, presumably were made post-agreement. Accordingly, any promises related to these payments could not have induced plaintiffs into enter to their arrangement with defendants.

[54]    *Martin Hilti Family Trust v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 430, 484 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting *Woods v. Maytag Co.*, 807 F. Supp. 2d 112, 124 (E.D.N.Y. 2011) (citing *Aetna Cas. & Sur. Co.*, 404 F.3d at 582)). This claim also is subject to the pleading requirements of Rule 9(b). *See, e.g., Lerner*, 459 F.3d at 291-92.

infringement claims seeking more than $20 million in damages. During that litigation, defendants received an offer to settle the claims for $2.4 million, but ultimately informed plaintiffs that they had settled the case for $1 million. Plaintiffs allege that defendants engaged in fraudulent concealment by failing to inform plaintiffs "of the original $2.4 million offer" and that plaintiffs "only became aware of that offer in August of 2016" after plaintiffs' counsel "obtained litigation documents kept secret from other members of LT."[55]

The initial question is whether any of the defendants owed a fiduciary duty to plaintiffs to disclose the $2.4 settlement offer.[56] There is nothing in the complaint to support the contention that GPC, IPH, Poltorak or Lerner owed any fiduciary duty to plaintiffs.[57] GPCI, however, was the managing member of LT.[58] It therefore owed the duties of managers under New York's Limited Liability Company Law – namely, to "perform [its] duties as a manager . . . in good faith and with that degree of care that an ordinarily prudent person in a like position would use under

---

[55]

DI 1 at 7.

[56]

"A duty to disclose arises in one of three circumstances: where the parties are in a fiduciary relationship; under the 'special facts doctrine,' where 'one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge,' or where a party has made a partial or ambiguous statement, whose full meaning will only be made clear after complete disclosure." *Aetna Cas. & Sur. Co.*, 404 F.3d at 582 (citations omitted). Plaintiffs, however, allege no facts to support either the special facts or partial disclosure theories.

[57]

The complaint alleges that GPC is the successor-in-interest to GPCI. DI 1 at 3; *see also* DI 37 at 2 (assertion by defendants that GPC was "formerly known as General Patent Corporation International"). To the extent that this allegation is meant to convey that GPCI assigned any rights or duties to GPC, the Court has no basis to conclude that GPC may be held liable for any breach of fiduciary duty by GPCI or that GPCI has been relieved of liability for any such breach.

[58]

DI 1-3 at 6.

similar circumstances."[59] Thus, plaintiffs plausibly have alleged that GPCI owed plaintiffs a fiduciary duty or its substantial equivalent.

The Court next considers whether this fiduciary duty encompassed a duty to disclose the $2.4 million settlement offer. It did not. The Operating Agreement as a whole contemplated that GPCI would conduct the day-to-day business of LT, which involved litigation and enforcement efforts with respect to the Leighton IP. Neither the Operating Agreement nor GPCI's obligation to operate in good faith and with reasonable care created a duty to disclose settlement offers to members of the LLC.[60] The complaint fails to allege that GPCI acted in bad faith or without

---

[59] N.Y. LTD. LIAB. CO. LAW § 409(a) (McKinney 2007); *see also* DI 1-3 at 6 ("[S]ubject to the other provisions of this Agreement, the Manages [sic] shall have all of the rights and powers of a Manager as provided under the Law and as otherwise provided by law."); *id.* at 1 (defining "Law" to mean "the New York Limited Liability Company Law, as amended from time to time"); *Weidberg v. Barnett*, 752 F. Supp. 2d 301, 307 (E.D.N.Y. 2010) ("[M]embers and managers of limited liability companies owe fiduciary duties not just to the LLC, but also directly to the members of the LLC.").

GPCI's duty to plaintiffs under the New York Limited Liability Company Law is akin to that of a corporate director to the corporation's shareholders. 16 N.Y. Jur. 2d Business Relationships § 2196 (2d ed. 2018) (stating that duty of good faith and care under § 409(a) is "the same fiduciary standard applied to corporate directors"); *see also* N.Y. BUS. CORP. LAW § 717(a) (McKinney 2007).

[60] The same is true with respect to the duty of corporate directors to perform duties in good faith and with reasonable care. A settlement offer to some extent is analogous to merger negotiations or agreements in principle, which generally are not subject to a corporate director's duty to disclose absent allegations of misconduct. *See Lindner Fund, Inc. v. Waldbaum, Inc.*, 82 N.Y.2d 219, 223-24 (1993) (noting corporate directors' "duty to disclose [to shareholders] arises in only a limited set of circumstances" and concluding directors had no duty to disclose acquisition agreement in principle); *see also id.* at 224 ("New York's business judgment rule . . . provides a measure of protection to a corporation's officers and directors when they act in the over-all best interests of all the shareholders and maintain the confidentiality of merger negotiations to avoid speculative or premature market fluctuations."); *Wey v. N.Y. Stock Exch., Inc.*, No. 602510/05, 2007 WL 1238596, at *8 (Sup. Ct. N.Y. Co. 2007) ("Generally, there is no duty to disclose confidential business negotiations."). *Cf. In re Lions Gate Entm't. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15 (S.D.N.Y. 2016) (in securities fraud context, finding no duty to disclose SEC settlement

reasonable care. Accordingly, the fraudulent concealment claim fails.[61]

## D.  *Breach of Fiduciary Duty*

Plaintiffs next allege that defendants breached their fiduciary duty.  Under New York law, a claim for breach of fiduciary duty involves three elements: "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom."[62]  As discussed above, the only defendant that arguably owed a fiduciary duty to plaintiffs was GPCI.  Plaintiffs' claim nonetheless fails because they fail to sufficiently allege a knowing breach.

Plaintiffs first allege that GPCI violated its fiduciary obligations to plaintiffs by "forming IPH and funneling a significant portion of LT revenues to IPH in the guise of 'expenses,'

---

[61]

    amount ahead of execution of settlement); *Brautigam v. Rubin*, 55 F. Supp. 3d 499, 508 (S.D.N.Y. 2014) (finding directors of Delaware corporation had "no duty to disclose . . . settlements before they were finalized" because "disclosure at any earlier point would have been premature and speculative").

    Plaintiffs' claims as to fraudulent concealment must be dismissed for the additional reason that the complaint fails to plead with particularity the defendants against which fraudulent concealment is asserted. *See, e.g., DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *In re Parmalat Sec. Litig.*, 479 F. Supp. 2d 332, 340 (S.D.N.Y. 2007) (same); *see also In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 695 (2d Cir. 2009) ("In a case involving multiple defendants, plaintiffs must plead circumstances providing a factual basis for scienter for each defendant; guilt by association is impermissible.").

    Plaintiffs' generalized allegation that defendants "engaged in similar patterns of fraud and concealment with many, if not all, of the 17 licensees of the Leighton Patents," DI 1 at 8, also fails Rule 9(b).

[62]

    *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011) (citations omitted).

in clear violation of the parties' agreements."[63]  Elsewhere in the complaint, however, plaintiffs

assert that IPH was formed in 1990 by defendant Poltorak, thirteen years before the formation LT.[64]

Accordingly, the facts alleged do not amount to a plausible showing that the formation of IPH

breached GPCI's fiduciary duty.  Nor do plaintiffs provide any well pled factual allegations to

support their claim that GPCI improperly funneled revenues to IPH.  The lone allegation that IPH

received more than $1.5 million from LT revenues in expenses, without more, is insufficient to

support a claim for breach of fiduciary duty.  Plaintiffs allege neither the substance of such

"reimbursed expenses" nor why any such reimbursement violated GPCI's fiduciary duty to plaintiffs.

Plaintiffs allege also various instances of self-dealing, including that (1) defendants

engaged in a kickback scheme with Sheldon and Donadio, (2) upon information and belief,

defendants engaged in a plan to redirect a portion of LT's legal expenses for their own benefit, and

(3) defendants engaged in additional kickback schemes involving parties against whom enforcement

efforts were brought by settling cases below market value for licensing and/or damages related to

infringement of LT's patents.  The first two of these allegations are not supported by any factual

allegations and cannot sustain a claim for breach of fiduciary duty.  As to the third allegation,

plaintiffs offer one example of defendants settling a case at $1 million despite having received an

offer for $2.4 million.[65]

In the context of directors on the board of a corporation, New York law adheres to

---

[63]     DI 1 at 6.

[64]     *Id.* at 3.

[65]     *Id.* at 7.

the "business judgment rule, which provides that, where corporate officers or directors exercise unbiased judgment in determining that certain actions will promote the corporation's interests, courts will defer to those determinations if they were made in good faith."[66] Absent allegations of fraud or bad faith, courts will respect such business determinations and refrain from any further judicial inquiry.[67] The same business judgment rule applies to a managing member of an LLC in respect of its analogous duty of good faith and reasonable care to its members.[68] Here, plaintiffs' allegations do not amount to a plausible showing that GPCI was not disinterested in the settlement or otherwise acted fraudulently or in bad faith. Accordingly, their claims of breach of fiduciary duty fail as to all defendants.

---

[66]

*In re Kenneth Cole Prods., Inc.*, 27 N.Y.3d 268, 274 (2016) (citing *40 W. 67th St. v. Pullman*, 100 N.Y.2d 147, 153 (2003)); *Chelrob, Inc. v. Barrett*, 293 N.Y. 442, 459-60 (1944)); *see id.* ("The doctrine is based, at least in part, on a recognition that: courts are ill equipped to evaluate what are essentially business judgments; there is no objective standard by which to measure the correctness of many corporate decisions (which involve the weighing of various considerations); and corporate directors are charged with the authority to make those decisions."); *see also Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 429 (S.D.N.Y. 2015) ("Under New York law, the business judgment rule 'bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes.'" (quoting *Auerbach v. Bennett*, 47 N.Y.2d 619, 629 (1979))).

[67]

*In re Kenneth Cole Prods., Inc.*, 27 N.Y.3d at 274; *see also Stern v. Gen. Elec. Co.*, 924 F.2d 472, 476 (2d Cir. 1991) ("[U]nder the New York business judgment rule, the actions of corporate directors are subject to judicial review only upon a showing of fraud or bad faith. To survive a motion to dismiss, then, a shareholder derivative complaint must allege that the directors acted fraudulently or in bad faith." (citations omitted)).

[68]

*See, e.g. Zuckerbrod v. 355 Co., LLC*, 113 A.D.3d 675, 676, 979 N.Y.S.2d 119, 120-21 (2d Dept. 2014) (granting summary judgment in favor of limited liability company managers on basis of business judgment rule).

*E. Faithless Servant*

Plaintiffs' faithless servant claim must be dismissed as there is no applicable remedy.

As, the Second Circuit previously has stated:

> "'New York law with respect to disloyal or faithless performance of employment duties is grounded in the law of agency, and has developed for well over a century.' *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200 (2d Cir. 2003) (citing *Murray v. Beard*, 102 N.Y. 505, 7 N.E. 553 (1886)). '[A]n agent is obligated "to be loyal to his employer and is prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."' *Id.* (quoting *W. Elec. Co. v. Brenner*, 41 N.Y.2d 291, 392 N.Y.S.2d 409, 360 N.E.2d 1091, 1094 (1977)). A person who is found to be faithless in his performance of services generally is liable for all compensation from the date of the breach, and the faithlessness need not have caused damages."[69]

Plaintiffs' remedy here, assuming they established liability, would be the forfeiture of defendants' compensation during the period of disloyalty. But there are no allegations in the complaint that defendants ever received any compensation from plaintiffs. Accordingly, plaintiffs' faithless servant claim must be dismissed.

*F. Equitable Accounting*

Plaintiffs next assert a claim for an equitable accounting. Plaintiffs allege that "[d]espite having made such request [for an accounting], Defendants have only provided summary reports which are insufficient to determine the full extent of revenues received and disbursements

---

[69] *Carco Grp., Inc. v. Maconachy*, 383 F. App'x 73, 76 (2d Cir. 2010); *see also Yukos Capital S.A.R.L. v. Feldman*, No. 15-cv-4964 (LAK), 2017 WL 481446, at *3-4 (S.D.N.Y. Feb. 6, 2017) (concluding that faithless servant doctrine had no bearing during the period after defendant had been ousted from position with plaintiff because there was no evidence that defendant had received any compensation from defendant during that period).

made."[70]

In order to sustain an equitable action for an accounting under New York law, a plaintiff must allege, among other things, that he or she has "a fiduciary or confidential relationship with the defendant"[71] and that he or she has no adequate remedy at law.[72] Although, as discussed above, plaintiffs arguably have alleged a fiduciary relationship with GPCI, they fail to allege that they lack an adequate remedy at law. Accordingly, plaintiffs' claim for an accounting fails.

G.     *Breach of the Implied Covenant of Good Faith and Fair Dealing*

"Implicit in every contract is a promise of good faith and fair dealing, which is breached when a party acts in a manner that, although not expressly forbidden by any contractual

---

[70]
DI 1 at 9.

[71]
*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 49 (2d Cir. 1996) (citing *Palazzo v. Palazzo*, 121 A.D.2d 261, 265, 503 N.Y.S.2d 381, 384 (1st Dept. 1986)). *See generally Roni LLC v. Arfa*, 18 N.Y.3d 846 (2011).

[72]
*See Soley v. Wasserman*, 639 F. App'x 670, 674 (2d Cir. 2016) ("New York law clearly requires that a principal demonstrate the unavailability of an 'adequate remedy at law' in order to prevail on a claim for an equitable accounting, in addition to establishing the existence of a fiduciary relationship." (emphasis omitted) (citing *Unitel Telecard Distrib. Corp. v. Nunez*, 90 A.D.3d 568, 569, 936 N.Y.S.2d 17 (1st Dept. 2011))); *Associated Mortg. Bankers, Inc. v. Calcon Mutual Mortg. LLC*, 159 F. Supp. 3d 324, 338 (E.D.N.Y. 2016) ("To state a claim for an accounting under New York law, a plaintiff must establish: (1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal." (internal quotation marks and citation omitted)); *Arbeeny v. Kennedy Exec. Search, Inc.*, 31 M.3d 494, 503, 921 N.Y.S.2d 784, 790 (Sup. Ct. N.Y. Co. 2011) ("In order for the court to order an accounting, plaintiff must show a fiduciary relationship with defendants involving the entrustment of money or property, that no other remedy exists, and that plaintiff demanded and was refused an accounting." (citations omitted)).

provision, would deprive the other party of the right to receive the benefits under their agreement."[73]
As the Second Circuit has stated previously:

> "In order to find a breach of the implied covenant, a party's action must 'directly violate an obligation that may be presumed to have been intended by the parties.' *Thyroff v. Nationwide Mut. Ins. Co.*, 460 F.3d 400, 407-08 (2d Cir.2006) (quotation marks omitted). The covenant cannot be used, however, to imply an obligation inconsistent with other terms of a contractual relationship. *Dalton*, 87 N.Y.2d at 389, 639 N.Y.S.2d 977, 663 N.E.2d 289."[74]

Plaintiffs' claim for breach seems to rely on their assertion that the expenses incurred by defendants in respect of LT reduced the royalty payments owed to plaintiffs.[75] The contract, however, expressly contemplated that any managers would pay and be reimbursed for "legal fees and related third-party expenses."[76] Although plaintiffs make the conclusory allegation that the reimbursed expenses were excessive, they provide no well-pled factual allegations to support their claim. In light of the fact that GPCI was entitled to incur and be reimbursed for expenses, plaintiffs cannot assert a claim of breach of the implied covenant of good faith and fair dealing on the basis of such incurrence and reimbursement without alleging bad faith. Plaintiffs make no such assertion here. This claim, accordingly, is dismissed.

---

[73]

*Skillgames, LLC v. Brody*, 1 A.D.3d 247, 252, 767 N.Y.S.2d 418, 423 (1st Dept. 2003) (internal quotation marks omitted) (citing *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 68 (1978); *Jaffe v. Paramount Commcn's Inc.*, 222 A.D.2d 17, 22-23, 644 N.Y.S.2d 43, 47 (1st Dept. 1996)); *see also Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995).

[74]

*Gaia House Mezz LLC v. State Street Bank & Trust Co.*, 720 F.3d 84, 93 (2d Cir. 2013).

[75]

The complaint does not allege with any specificity which actions by defendants breached the implied covenant of good faith and fair dealing.

[76]

DI 1-3 at 9.

*H.    Interference With Prospective Business Opportunity*

To state a claim for tortious inference with business opportunities, a plaintiff must allege that "a defendant uses wrongful means to engage in conduct directed at a third party with whom a plaintiff has or seeks to have a business relationship, causing damage to the plaintiff."[77] Plaintiffs allege that defendants granted overly broad licenses of the Leighton IP, thereby squandering opportunities for infringement claims.[78] Here again, GPCI was expressly empowered to execute licenses on behalf of LT.[79] The complaint sets forth no facts that would support any inference that any such licenses were granted wrongfully or dishonestly. Accordingly, this claim must be dismissed as well.

*I.    Failure to Disclose, Prohibited Transactions, and Self-Dealing*

Plaintiffs appear to assert an independent claim of "failure of duty to disclose," but assert no facts to form the basis for such a claim beyond those already considered in the context of plaintiffs' claims of fraudulent concealment and breach of fiduciary duty. Plaintiffs similarly assert

---

[77]

*ARB Upstate Commc'ns LLC v. R.J. Reuter, L.L.C.*, 93 A.D.3d 929, 933, 940 N.Y.S.2d 679, 685 (3d Dept. 2012) (citing *Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 192 (2004)); *see also Elcan Indus., Inc. v. Cuccolini, S.R.L.*, No. 13-cv-4058 (GBD)(DF), 2014 WL 1173343, at *9 (S.D.N.Y. Mar. 21, 2014) ("In order to state [a claim for tortious interference with other business opportunities] under New York Law, a Plaintiff must allege that (1) it had business relations with a third party; (2) [defendant] interfered with those business relations; (3) [defendant] acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) [defendant's] acts injured those relations." (citing *Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 547 F.3d 115, 132 (2d Cir. 2008))).

[78]

DI 1 at 9.

[79]

DI 1-3 at 6.

claims of "engaging in prohibited transactions" and "self-dealing," but provide no factual, statutory or common law basis for these claims. Any allegations as to these purported claims appear to be coextensive with plaintiffs' claims of breach of fiduciary duty. Plaintiffs therefore have failed to state cognizable, non-duplicative claims that defendants did not comply with a duty to disclose and engaged in prohibited transactions and self-dealing.

## J.  *Legal Malpractice*

In order to state a claim for legal malpractice under New York law, a plaintiff must allege an attorney-client relationship at the time of the alleged malpractice.[80] Plaintiffs have not done so here. Accordingly, this claim is dismissed.

## K.  *Spoliation of Evidence*

Finally, plaintiffs assert a claim of spoliation of evidence. "Spoliation is the destruction or significant alteration of evidence, or failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."[81] The three elements of a spoliation claim are "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the [evidence was] destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact

---

[80]

E.g., *Case v. Clivilles*, 216 F. Supp. 3d 367, 379 (S.D.N.Y. 2016) (citing *M.J. Woods, Inc. v. Conopco, Inc.*, 271 F. Supp. 2d 576, 583 (S.D.N.Y. 2003)).

[81]

*Tchatat v. O'Hara*, 249 F. Supp. 3d 701, 706 (S.D.N.Y. 2017) (internal quotation marks omitted) (quoting *In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 148 (2d Cir. 2008)).

could find that it would support that claim or defense."[82]  Plaintiffs here allege only that defendants retained certain documents and not others in respect of LT.  These allegations do not assert any basis that defendants were obliged to retain any documents that they allegedly failed to preserve.  Moreover, plaintiffs fail to allege plausibly that defendants destroyed such documents with the requisite state of mind.  This claim therefore is dismissed as well.

## Conclusion

For the foregoing reasons, plaintiffs' objections to the R&R are sustained.  Defendants' motion to dismiss the complaint [DI 36] is granted in its entirety.  Leave to amend is granted on the condition that any amended complaint be filed no later than 21 days after the date of this order.

SO ORDERED.

Dated:        May 23, 2018

_____
Lewis A. Kaplan
United States District Judge

---

[82]  *Id.* (internal quotation marks omitted) (quoting *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012)).